IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEITH HUFFORD, *et al.*,               :

    Plaintiffs,                    :
                               Case No. 3:05cv285
    vs.                            :
                               JUDGE WALTER HERBERT RICE
PROVIDA LIFE SCIENCES, INC., *et al.*, :

    Defendants.                    :

---

**DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #40), DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #41) AND DEFENDANTS' SUPPLEMENTAL MOTION FOR [PARTIAL] SUMMARY JUDGMENT (DOC. #48)**

---

Plaintiff Sandra Hufford ("Hufford" or "Mrs. Hufford") sustained an eye injury while using an exercise band system that was allegedly designed, developed, manufactured, marketed, distributed and sold by Defendants, Provida Life Sciences, Inc. ("Provida"), Six Week Body Makeover, LLC ("SWBM") and Lenco Corporation ("Lenco").[1]  Hufford and her husband, Keith Hufford ("Mr. Hufford"), bring suit, alleging four products liability related claims, to wit:  defective design (Count I), defective manufacture (Count II), inadequate warnings/instructions

---

[1]The Court has jurisdiction over these parties, under the diversity provisions of 28 U.S.C. § 1332, in that Mr. and Mrs. Hufford are Ohio residents, while the three Defendants have their principal places of business in California. Doc. #23 at 1-2.

(Count III) and misrepresentation (Count IV). Doc. #23. The Plaintiffs also assert a claim for loss of consortium (Count V), on behalf of Mr. Hufford. Id.

Presently before the Court are three motions for partial summary judgment. Both the Plaintiffs and the Defendants move for summary judgment, as to the inadequate warnings/instructions and defective design claims. Doc. #40 (Pls.' Summ. J. Mot.); Doc. #48 (Defs.' Supp. Summ. J. Mot.) (requesting summary judgment as to Claims I and III). Furthermore, the Defendants assert that neither Lenco nor SWBM are proper Defendants in this suit, in that neither is responsible for the design, manufacture or sale of the product in question, and seek summary judgment as to all claims against them. Doc. #41 (Defs.' Summ. J. Mot.). The Court will first address the Motions pertaining to the products liability claims (inadequate warnings/instructions and defective design) and will then determine the identity of the proper Defendants, as to all remaining claims.

I.    FACTS

The facts of this case are largely undisputed. In March 2005, Hufford purchased an exercise system called the Michael Thurmond Six Week Body Makeover System. Doc. #37 (Hufford Dep.) at 28-29. The system (referred to herein as the "exercise system" or "product") was comprised of printed materials and two videotapes, as well as an elastic exercise band and a woven strap with a

2

hard rubber-like block that served as an anchoring device.[2] Doc. #40, Ex. 3 (Ayers Aff.) at 7.

The parties dispute the existence of a document that allegedly provided a written warning ("warning insert") regarding the use and assembly of the elastic band and anchor device. Hufford claims that no such document was included in her system, while the Defendants assert that such a warning insert is included in the package with every such exercise system they sell. Doc. #37 (Hufford Dep.) at 40-43; Doc. #41, Ex. A (Sands Aff.) ¶ 5. That document allegedly reads as follows:

Caution: Your [Exercise] Band is under extreme tension when stretched in resistance exercises. Never position the [Exercise] Band where it may snap toward head or face. Inspect the [Exercise] Band before each use for surface wear or damage that may cause sudden breakage.

Warning! An improperly anchored [Exercise] Band may suddenly release under tension and cause serious bodily injury. Always follow these instructions when using a door to anchor the [Exercise] Band:

_____

[2]The Defendants purchased the elastic bands from a Chinese company. Doc. #36 (Clifford Dep.) at 28. The Plaintiffs' expert describes the elastic band and anchoring device as follows:

This band consists of two D-shaped handles that are attached to a purple-colored elastic tube. A woven fabric strap is supplied that can be attached to either the D-handles or to the elastic tube itself to allow the [exercise band] to be anchored through a door to provide a fixed point for resistance training. This woven strap encapsulates a hard rubber-like block that is intended to prevent the [exercise band] from coming free when utilized as a resistance-training device.

Doc. #40, Ex. 3 (Bookwalter Ltr.) at 7.

3

1. Slide the anchor strap over the [Exercise] Band handle (fig. 1) and position it in the precise center of the band (fig. 2).
2. Position the anchor strap behind a solid core door (fig. 3) that securely closes and locks.
3. Close and lock the door so that is cannot be opened from the opposite side.
4. Before exercising, tug on the [Exercise] Band to assure that it is securely anchored behind the door.

Failure to follow these instructions may result in the anchor strap releasing under tension and violently striking the face or body.

Doc. #41, Ex. C (Warning Insert) (emphasis in original).[3]

On the day of the incident, Hufford first followed the instructions for putting together a book of specific exercises and diet meals, which were contained on one of the videotapes ("Start Here Now"). Doc. #37 (Hufford Dep.) at 49-50, 57. After putting together the book, she decided to begin with one of the exercises from her newly-assembled book called "Middle Back Row, Targeted Sculpting Movement 7." Id. at 51; Doc. #39 (Thurmond Dep.), Ex. 1.12. For further instructions, Hufford inserted the second videotape ("Workout Less Precision Body Sculpting") and fast forwarded to the explanation of said exercise. Doc. #37 (Hufford Dep.) at 51, 57-59. After playing the tape, she followed the instructions

---

[3]This document is not properly authenticated. Since there is no dispute between the parties as to the contents of the document (only as to its existence in the system received by Hufford), the Court will rely upon it, in ruling on the issues presented here. Specific instructions are given to Defendants, at the conclusion of this Decision, however, regarding placing this evidence in proper Rule 56 form. Failure to comply will cause this Court to vacate its ruling, on certain of the issues herein.

4

on the video as to how to put the exercise band and anchoring device together.[4] Id.
at 53, 89-90.

Hufford alleges that, in accordance with the video instructions, she pulled
open a solid, wooden door into her dining room, placed the anchoring device on the
other side of the door, pushed the door shut, and pulled on the band a couple of
times to make sure it was "stuck".[5] Id. at 59-61, 90. She then placed a chair
approximately three feet away from the door and sat down facing the door to do
the exercise. Id. at 61-62.

------

[4]As to the instructions contained in the book and video, the Defendants'
expert testifies as follows:

> The written instructions and photograph for the Middle Back Row
> Exercise #7 state that the user is to start with the [exercise] band at
> the top of the door jamb and sit facing the door with the back
> straight. In the introduction to the Workout Less Precision Body
> Sculpting video, Michael Thurmond instructs the user as to how to
> attach the door anchor to the [exercise] band and also instructs the
> user to lock the door so it is not going to come open.

Doc. #41, Ex. B (Cargill Aff.) ¶¶ 4-5.

[5]The following communication transpired, during Hufford's deposition,
regarding more specific information about the door:

> Q:    The door that you were using . . . has roughly a quarter of an
>       inch at the top crack of the door, roughly the same amount on
>       the lengthwise portion of the door where the handle is, correct?
> A:    Probably, yeah.

Doc. #37 (Hufford Dep.) at 90.
When responding to a question about whether the Workout Less Precision
Body Sculpting video instructed her how to put the exercise band/anchoring device
on the door, Hufford responded, "[i]t said to put it above the door, make sure the
door is shut. That's it." Id. at 59.

As to the technique involved in performing the exercise, the instructional

materials show that the user must pull the elastic exercise band toward the face

and head when doing the exercise. Doc. #40, Ex. 3 (Bookwalter Ltr.) at 8. In

accordance with these instructions, Hufford executed two repetitions of the

exercise without incident, but on the third repetition, the anchoring device came

free from its position, striking and injuring her left eye.[6] Doc. #37 (Hufford Dep.) at

62-63. Hufford alleges that the door did not come open and that she does not

know how the device came free from the door.[7] Doc. #37 (Hufford Dep.) at 62.

_____

[6]In their Complaint and memoranda, the Plaintiffs state that Hufford is
"permanently blind," in her left eye, as a result of the accident. E.g., Doc. #40 at
9. However, the evidence they site (Hufford's Deposition, pages 62-63), in
support of this statement, is not supportive of anything other than an eye injury.

[7]Specifically, the testimony goes as follows:

Q.   What hit you?
A.   That, the anchor.
Q.   How did it come out of the door?
A.   I don't know.
Q.   Did the door open?
A.   No. The door wasn't open. That's how I couldn't figure out
     how.
Q.   You've placed the anchor over the top of the door; and you
     would agree with me that the crack, if you will, at the top of
     your dining room door is about a quarter of an inch, give or
     take? Is that fair?
A.   I guess.
Q.   It's certainly smaller than this anchor device, correct?
A.   Yes.
Q.   So you've placed that over the top of the door, so now the
     anchor is toward your stairs looking, going up to the second
     floor, correct?
A.   Right.
Q.   And the [exercise band with the] black handles [is] hanging

On his site visit to the Hufford residence, the Plaintiffs' expert affixed the

anchor and exercise band to the same door and in the same manner, as Mrs.

Hufford allegedly did, yet when he repeatedly pulled on the band, the anchor

device did not pull free (nor did the door come open). Doc. #48, Ex. A (Bookwalter

Dep.) at 51-54. On this same point, according to the force calculations and testing

of the Defendants' experts,

> Mrs. Hufford would have had to have stretched the [exercise] bands
> approximately eight feet beyond their resting length, exerting over 55
> pounds of force, in order to begin to form a gap at the weakest part of
> the door, the upper right portion away from the hinge side. Additional
> force would have been required to compress the anchor and open
> additional space between the door and jamb to get the anchor to
> come out without opening the door.

Doc. #41, Ex. B (Cargill Aff.) ¶ 8.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." Celotex Corp.

---

down towards you on the dining room side of the door, correct?
A.    Correct.
Q.    And that door opens toward the dining room, correct?
A.    Right.
Q.    And you're seated in a chair about 3 feet away from the door
      and do two of the middle back row exercises, and on the third
      one the anchor comes out of the door without the door opening.
A.    Right.

Doc. #37 (Hufford Dep.) at 62-63.

7

v. Catrett, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must

present evidence that creates a genuine issue of material fact making it necessary

to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241,

1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

(1986). Once the burden of production has so shifted, the party opposing

summary judgment cannot rest on its pleadings or merely reassert its previous

allegations, it is not sufficient to "simply show that there is some metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go

beyond the [unverified] pleadings" and present some type of evidentiary material in

support of its position. Celotex, 477 U.S. at 324. "The plaintiff must present more

than a scintilla of evidence in support of his position; the evidence must be such

that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv.,

Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

8

affidavits, if any, show there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).
Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that
properly can be resolved only by a finder of fact because they may reasonably be
resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th
Cir. 1992) (citation omitted). In determining whether a genuine issue of material
fact exists, a court must assume as true the evidence of the nonmoving party and
draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255.
If the parties present conflicting evidence, a court may not decide which evidence
to believe, by determining which parties' affiants are more credible; rather,
credibility determinations must be left to the fact-finder. 10A Wright, Miller &
Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining
whether there is a genuine issue of material fact), "[a] district court is not . . .
obligated to wade through and search the entire record for some specific facts that
might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889
F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S.
Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v.
Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506
U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift
through the record in search of evidence to support a party's opposition to
summary judgment . . . ."). Thus, a court is entitled to rely, in determining

whether a genuine issue of material fact exists on a particular issue, only upon

those portions of the verified pleadings, depositions, answers to interrogatories and

admissions on file, together with any affidavits submitted, specifically called to its

attention by the parties.

## III. PRODUCTS LIABILITY ANALYSIS

In accordance with the Ohio Products Liability Act (Ohio Revised Code

Annotated § § 2307.71-2307.81), a "manufacturer"[8] is subject to liability for

compensatory damages based on a products liability claim only if the claimant

establishes, by a preponderance of the evidence, all of the following:

(1)  [That] the manufacturer's product in question was defective in
     manufacture or construction as described in section 2307.74 of the
     Revised Code, was defective in design or formulation as described in
     section 2307.75 of the Revised Code, was defective due to
     inadequate warning or instruction as described in section 2307.76 of
     the Revised Code, or was defective because it did not conform to a
     representation made by its manufacturer as described in section
     2307.77 of the Revised Code;[9]

(2)  A defective aspect of the manufacturer's product in question as
     described in division (A)(1) of this section was a proximate cause of
     harm for which the claimant seeks to recover compensatory damages;
     [and]

---

[8]A "manufacturer" is defined to mean "a person engaged in a business to
design, formulate, produce, create, make, construct, assemble, or rebuild a product
or a component of a product." Ohio Rev. Code Ann. § 2307.71(A)(9).

[9]While the Plaintiffs allege that the product was defective in all four of the
means described in § 2307.73(A)(1), the motions for summary judgment only
pertain to the claims for defective design and inadequate warnings.

10

(3)     The manufacturer designed, formulated, produced, constructed, created, assembled, or rebuilt the actual product that was the cause of harm for which the claimant seeks to recover compensatory damages.

Ohio Rev. Code Ann. § 2307.73(A) (emphasis added). Important to the resolution of the products liability claims, at issue in this litigation, is the requirement that a plaintiff show that a manufacturer's product was defective and was a proximate cause of the plaintiff's harm, in order for the plaintiff to be entitled to compensatory damages. The Court will begin with an analysis of the Plaintiffs' claim for inadequate warning and then turn to a discussion of the claim for defective design.

## A.     Inadequate Warnings/Instructions

As indicated above, in order to be successful on a products liability claim for inadequate warning, a plaintiff must demonstrate both that the product was defective and that the defect was a proximate cause of the plaintiff's injury. The Court will address each requirement in turn.

### 1.     Defect

#### a.     Law

In general, a product is defective due to inadequate warning or instruction at

11

the time of marketing,[10] if both of the following apply:

- (a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages; [and]

- (b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

Ohio Rev. Code Ann. § 2307.76(A)(1). Thus, a plaintiff must prove that the

manufacturer knew or should have known of the risk or hazard about which it

failed to warn. Further, there will be no liability unless it be shown that the

manufacturer failed to adequately warn, in the manner that a reasonable

manufacturer would have so warned. One exception to this, however, is that a

product is not defective due to an inadequate warning, if the manufacturer failed to

warn about "an open and obvious risk or a risk that is a matter of common

knowledge." Ohio Rev. Code Ann. § 2307.76(B).

Under Ohio law, "a warning is adequate if it reasonably discloses all inherent

risks, and if the product is safe when used as directed." Hisrich v. Volvo Cars of N.

Am., Inc., 226 F.3d 445, 452 (6th Cir. Ohio 2000) (citing Crislip v. TCH

Liquidating Co., 52 Ohio St.3d 251, 556 N.E.2d 1177 (1990); Seley v. G.D. Searle

---

[10]There are separate criteria if the alleged defect occurs after the product leaves the control of the manufacturer, which are not applicable in this case. See Ohio Rev. Code Ann. § 2307.76(A)(2).

12

Co., 67 Ohio St.2d 192, 423 N.E.2d 831 (1981)); see also Jenisek v. Highland

Group, Inc., 2004 Ohio App. LEXIS 4442, *7 (Ohio 8th App. Dist. Sept. 16, 2004)

(same). Further, Ohio courts recognize only two affirmative defenses to products

liability claims based upon strict liability in tort: assumption of the risk and

unforeseeable misuse of product. Hertzfeld v. Hayward Pool Prods., 2007 Ohio

App. LEXIS 6213, **31-32 (Ohio 6th App. Dist. Dec. 31, 2007) (citing Calmes v.

Goodyear Tire & Rubber Co., 61 Ohio St.3d 470, 476, 575 N.E.2d 416 (1991)).

In this case, there is no dispute about whether the Defendants knew of the

risk of injury should the product come free from the door. See e.g., Doc. #36,

Attach. #2 (Clifford Dep.) (noting that Defendants considered possibility of injury, if

anchoring device was under tension and door came open). The question for

consideration, then, is whether the Defendants failed to adequately warn of that

risk, in the manner that a reasonable manufacturer would have so warned. The

Court will first consider the Defendants' summary judgment arguments, on this

issue, and then turn to those of the Plaintiffs. If necessary, the Court will then

address the question of whether the risks associated with the use of the product

were open and obvious.

### b. Defendants' Arguments Pertaining to Defect of Warning/Instruction

Pointing to the warning contained in the warning insert and the instructions

contained in the videotape, the Defendants argue that they provided adequate

warnings about the risks associated with the product. In support thereof, they point to the fact that the warning insert specifically states that "an improperly anchored [exercise band] may suddenly release under tension and cause serious bodily injury." Doc. #41 at 6-8.[11] The Defendants then assert, based on the testing and calculations performed by their expert, that Mrs. Hufford did not follow the instructions regarding mounting the exercise band/anchoring strap system, as set forth in the warning insert and the video, ultimately concluding that "[Mrs.] Hufford's failure to follow the instructions resulted in her suffering the exact injury that the warning covers." Id. at 8; Doc. #52 at 8-9.

The problem with the Defendants' argument, on this point, is two-fold. First, although the Defendants state that they placed warning inserts in each exercise system package they sold, reviewing the evidence in the light most favorable to the Plaintiffs (as the Court must do while considering the Defendants' Motion for Partial Summary Judgment), the Court notes that Mrs. Hufford contends that such an insert was not contained in the package she received. Thus, there is a genuine issue of material fact as to whether Mrs. Hufford received the warning insert that cautioned her that not following the instructions might result in the anchor strap releasing under tension and violently striking her face or body.

---

[11]Due to the nuances of the Court's electronic case filing system, the Defendants have double-filed their combined memorandum in support of their Motion for Partial Summary Judgment and memorandum in opposition to the Plaintiffs' Motion for Partial Summary Judgement at Document #41 and Document #43. For simplicity, the Court will refer only to Document #41 throughout this Opinion.

14

Second, whether Mrs. Hufford did or did not follow the instructions regarding

mounting the system, assuming she received same with the product, is irrelevant

to the question at hand, unless her "misuse" constituted an "unforeseeable

misuse" of the product. The Defendants, however, have set forth no evidence

indicating that a user improperly assembling or mounting an exercise system such

as the one at issue in this case is unforeseeable. Accordingly, there is no genuine

issue of material fact on the Defendants' defense of unforeseeable misuse and,

thus, the Defendants' argument on this point is unpersuasive.

Since, at this juncture, there is a genuine issue of material fact as to whether

the warnings allegedly contained in the exercise system were actually packaged in

Mrs. Hufford's system and, if so, whether they were adequate, the Court will move

to a consideration of the Plaintiffs' argument, on the question of the adequacy of

the warnings, assuming, arguendo, that such warnings were included in the system

packaging.

## c. Plaintiffs' Arguments Pertaining to Defect of Warning/Instruction

As a follow-on to the previous discussion, the Plaintiffs argue (among other

things) that the product warnings were inadequate because the only thing that

contained a warning about the possible hazards of using the exercise system was

the warning insert, which Mrs. Hufford allegedly did not receive in her package.

Doc. #40 at 14. Furthermore, the Plaintiffs contend that even if the warning insert

15

was contained in the package, the other materials in the system (e.g., the book
and video) contradicted the warning contained thereon, since the warning insert
cautioned to "never position the [exercise band] where it may snap toward [the]
head or face" while the other materials instructed the user to do just that while
performing the exercise in question. Id. at 15-16.

The Plaintiffs' argument here is well-taken. The only thing that warned
about the dangers associated with the anchoring device coming free of its position
was the warning insert, but that warning was contradicted, in part,[12] by the
manner in which the user was instructed to perform the various exercises. The
Defendants did not adequately warn about the associated risk of the product in
question. Because there is not a genuine issue of material fact, on this point, the
Plaintiffs are entitled to summary judgment, assuming the risks were not "open and
obvious" and that the lack of adequate warning was a proximate cause of Mrs.
Hufford's injury.

---

[12]As previously noted, the warning insert contained two warnings - - - one
warning generally about the dangers of positioning the band where it may snap
toward the head or face while exercising and the other more specifically warning
about the dangers of improperly anchoring the system. Doc. #41, Ex. C. The
Defendants focus on the more specific warning about improper anchoring, while
the Plaintiffs focus on the general warning about the positioning of the band while
exercising. Since the Court views the hazard in using the product in question as
being the risk of injury if the product is either installed improperly or otherwise
comes free of its anchored position as a result of product malfunction, it will
consider both warnings in its analysis herein.

16

    d.    Whether Hazards were Open and Obvious

The Defendants argue that the danger of an exercise band user being struck when an improperly anchored band is pulled and released under tension is common knowledge and, thus, no warning is even necessary. Doc. #41 at 4-6. In support thereof, the Defendants point to several Ohio cases that found that similar common dangers were found to be open and obvious. Id. at 5-6 (citing, e.g., Hanlon v. Lane, 98 Ohio App.3d 148, 648 N.E.2d 26 (Ohio 9th App. Dist. 1994) (holding that gas company had no duty to warn about the risk of carbon monoxide poisoning from the use of an improperly vented gas furnace, as it was a matter of common knowledge)).

The Plaintiffs counter by arguing that although the hazards of using elastic exercise bands may or may not be open and obvious, the hazards associated with using those bands in conjunction with "doors, door frames and door hardware" that are "subject to large variations in the potential user population" are not open and obvious. Doc. #42 at 14-16;[13] Doc. #50 at 17-18. The Plaintiffs also point to the fact that the instructions specifically tell the user to face the door, thereby negating any possible "obviousness" that a user may associate with the use of such exercise bands. Doc. #42 at 14 n.1.

---

    [13]Due to the nuances of the Court's electronic case filing system, the Plaintiffs have double-filed their combined memorandum in opposition to the Defendants' Motion for Partial Summary Judgment and reply memorandum to their Motion for Partial Summary Judgement at Document #42 and Document #44. For simplicity, the Court will refer only to Document #42 throughout this Opinion.

Ohio courts have determined that, "if a product's danger is a matter of

common knowledge or if the danger is open and obvious to the user of the

product, then the manufacturer has reason to believe that the consumer will realize

the product's danger and a duty to warn will not arise." Hanlon v. Lane, 98 Ohio

App. 3d 148, 153, 648 N.E.2d 26 (Ohio 9th App. Dist. 1994) (citations omitted).

The question for this Court, then, is whether the hazards associated with the use

of an exercise band/anchoring device that is either properly or improperly mounted

to a door are a matter of common knowledge.

In Nelson v. Stellar Seafoods, Inc., 2006 U.S. Dist. LEXIS 89491 (W.D.

Wash. Dec. 8, 2006), the District Court determined that a bungee cord that struck

and injured a cook working on a sea vessel was an open and obvious danger. In so

doing, it stated as follows:

> Any danger associated with using a bungee cord is an open and
> obvious danger for which no duty to warn or to train attaches. The
> essence of a bungee cord is to secure an object by using the tension
> created when the cord is stretched around it. It is obvious that if one
> end releases under sufficient tension, the cord will recoil toward the
> stationary end, potentially striking anything in its way. Accordingly,
> safely securing each end of the cord, and standing to the side of the
> cord while stretching it are obvious techniques a person would employ
> when using a bungee cord. Defendants had no duty to warn or to
> train where common knowledge and experience provides the needed
> information.

Id. at 12-13 (emphasis added); see also Jamieson v. Woodward & Lothrop, 247

F.2d 23, 28 (D.C. Cir. 1957) (determining that the hazards associated with an

elastic exercise band, which slipped off of the user's foot, were open and obvious;

18

"Surely every adult knows that, if an elastic band, whether it be an office rubber band or a rubber rope exerciser, is stretched and one's hold on it slips, the elastic snaps back. There was no duty on the manufacturer to warn of that simple fact.").

The Court agrees that, in general, the hazards associated with the use of an elastic exercise band (that it might snap back, either because it breaks or because it is not installed properly), either with or without the use of a door and anchoring device, are commonly known. However, this case presents one extra fact that complicates the matter somewhat - - - that the materials instructed the user to face the hazard, in that they required her to pull the exercise band toward the face and head when exercising, thereby not allowing her to position herself in a way to avoid possible injury should the system malfunction for whatever reason.

Thus, the Court concludes that there is a genuine issue of material fact as to whether the hazards associated with the use (or mis-installation) of an elastic exercise band, in conjunction with a door and anchoring device as an anchoring system, while performing exercises during which the user is instructed to pull the exercise band toward her face and head, are open and obvious. Therefore, neither of the parties' Motions for Partial Summary Judgment are well taken, on the issue of whether the product was defective due to inadequate warning or instruction.

### 2. Proximate Cause

Under Ohio law, a plaintiff asserting a products liability claim alleging that a

product is defective due to an inadequate warning must set forth proof not only

that the warning was defective, but also that the defective warning was a

proximate cause of the harm for which she seeks to recover damages. Ohio Rev.

Code Ann. § 2307.73(A)(2). The proximate cause analysis is, to some extent, tied

to the analysis concerning whether the warning in question was defective.

As previously noted, the Court has concluded that the warnings in the

present case were defective, there being no genuine issue of material fact as to

whether they adequately warned about the associated risks of the product in

question.[14] In such cases, a rebuttable presumption of proximate cause arises,

beneficial to the plaintiff.[15] McConnell v. Cosco, Inc., 238 F. Supp. 2d 970, 978

(S.D. Ohio 2003) (citing Seley, 67 Ohio St. 2d 192).

The Defendants, in this case, attempt to rebut this presumption by arguing

that an inadequate warning cannot be the proximate cause of an injury, if the user

failed to read the warning in question. The Defendants are correct in their legal

assertion. As noted by an Ohio District Court,

---

[14]Should the jury, in this case, ultimately conclude that the risks associated with the product are open and obvious, no warning was required. Thus, the Defendants cannot be found liable for inadequate warnings and the proximate cause analysis here will have been unnecessary. If, however, the jury concludes that the risks were not open and obvious, a proximate cause analysis will be required.

[15]In contrast, if an adequate warning is given, a presumption arises in favor of the manufacturer that the warning will be "read and heeded." McConnell, 238 F. Supp. 2d at 978 (quoting Seley, 67 Ohio St. 2d 192).

20

> the inadequacy of a warning cannot be the proximate cause of a plaintiff's injuries if the user of a product failed to read the warnings accompanying the product. Even if such a warning were adequate, it could not prevent the harm if the user did not read the warning.

McConnell, 238 F. Supp. 2d at 978 (citing Hisrich v. Volvo Cars of N. Am., Inc., 226 F.3d 445, 451 (6th Cir. 2000) (applying Ohio law)). The failure to read a warning does not automatically rebut a presumption of inadequacy, however. For example, courts have concluded that the presumption is not rebutted in cases where the warning was found to be inconspicuous. Falkner v. Para-Chem, 2003 Ohio App. LEXIS 2819, *26 (Ohio 9th App. Dist. June 18, 2003) (finding presumption of inadequacy not rebutted when user read front label of container, but did not read side label with "inconspicuous" warning).

The Defendants contend that Mrs. Hufford did not read the warning insert that was included in the package when she received her exercise kit. Doc. #41 at 11. Furthermore, they assert that she did not read and/or follow the instructions concerning how to mount the system on the door, as evidenced by the fact that their expert concluded that the device would not have come loose had it been properly installed. Doc. #41 at 10-11;[16] Doc. #52 at 4-7. Finally, the Defendants

---

[16]The Defendants also attempt to support their position by pointing out that Mrs. Hufford initially was in a different room when she listened (rather than watched) the first tape and she fast-forwarded the second video to the exercise in question, asserting that she "skipp[ed] the introduction and instructions." Doc. #41 at 10. However, they provide nothing to indicate that she failed to hear any pertinent instructions while listening to the first tape or that it was made clear that there were additional safety instructions or warnings on the second video. Thus, the Court finds this argument to be unhelpful.

21

assert that the Plaintiffs' expert did not conduct an engineering analysis or render an opinion about what caused the anchor strap system to come out of the door without the door opening. Doc. #48 at 6-10; Doc. #52 at 2-7.[17]

The Defendants arguments, on this point, are misplaced. As to the argument that Mrs. Hufford did not read the warning insert, as previously stated, it is unclear whether she received the insert and even if she did, the warning contained thereon about not facing the product was contradicted by other instructions, which she did read (or view), in the materials about how to perform the various exercises. Also, the Defendants improperly focus on Hufford's alleged improper installation of the product. As previously stated, her misuse of the product is only relevant if it was an unforeseeable misuse, which the Court has concluded is not the case here, given the lack of a genuine issue of material fact on this issue. As to the argument about the Plaintiffs' expert not rendering an informed opinion about the cause of the accident, the law does not impose such a requirement on the Plaintiffs. Rather, at this stage of the analysis, the Defendants are burdened with a presumption that their inadequate warning was a proximate cause of Hufford's injury. Seley v. G.D. Searle & Co., 67 Ohio St. 2d 192, 423

---

[17]The Defendants also point out that the Plaintiffs' expert is critical of the warnings and instructions in that they lack specific information regarding the condition and age of the door, the latch, the door jamb and the hinges. Doc. #52 at 3. The Defendants argue that this is irrelevant since there is no indication, on the record, that any aspect of the door, whether its condition, age, latch, jamb, hinges or use or failure to use a deadbolt, played any part in Mrs. Hufford's accident. Id. The Court agrees with this assertion and, thus, will not consider the Plaintiffs' contentions associated with such argument.

N.E.2d 831, 838 (1981). The Court concludes, based on the present analysis, that the Defendants have not rebutted this presumption.

In sum, as previously decided, the warnings were inadequate in that they did not adequately caution about the associated risks of the product in question (i.e., the risk of harm to the user if the product was either installed improperly or otherwise came free of its anchored position as a result of product malfunction). However, a warning may not have even been necessary if the risk of harm was open and obvious - - - a question about which there exists a genuine issue of material fact. Should this case proceed to trial and the jury determine that the risk was open and obvious, the Plaintiffs' claim for inadequate warnings will fail, because a warning was not necessary. Should, however, the jury determine that the risk of harm was not open and obvious, there exists a presumption that the inadequate warnings were a proximate cause of the harm suffered by Mrs. Hufford, which has not been rebutted by the Defendants and about which there is no genuine issue of material fact, and the Defendants will, thus, be liable for any harm caused thereby.

Thus, as to the Plaintiffs' claim that the product was defective due to inadequate warning or instruction (Count III), the Plaintiffs' Motion for Partial Summary Judgment (Doc. #40) is SUSTAINED, on the question of the inadequacy of the warning and proximate cause, but OVERRULED, as to the question of whether the hazards associated with the product were open and obvious, while the Defendants' Motion for Partial Summary Judgment (Doc. #48) is OVERRULED, as

to all questions pertaining to this claim.

## B. Defective Design

Just as with the claim for inadequate warning or instruction, in order to be successful on a products liability claim for defective design, a plaintiff must demonstrate both that the product was defective and that the defect was a proximate cause of the plaintiff's injury. The Court will briefly review Ohio law on the aspect of whether the design was defective and will then turn to an analysis of proximate cause.

In accordance with the Ohio Revised Code, a product is defective in design if, at the time it left the control of the manufacturer, the foreseeable risks associated with its design[18] exceeded the benefits associated with that design.[19]

---

[18] The "foreseeable risks" associated with the design of a product are determined by considering factors including, but not limited to, the following:

(1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

(3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer.

24

Ohio Rev. Code Ann. § 2307.75(A). The Plaintiffs, in this case, argue that the foreseeable risk associated with the design of the exercise system in question is that the design depended on using a door with unknown characteristics (e.g., age, hardware, jamb location) that may not be suitable as an anchor, while there are no performance or safety advantages to using the stated design. Doc. #40 at 20-21.

The Court will not dwell on the question of whether there was a defect in the design of the exercise system, as suggested by the Plaintiffs. Even assuming that the product was defective, because it depended on using a door with unknown characteristics that may not be suitable as an anchor, the Court finds that, viewing the evidence in the light most favorable to the Plaintiffs, the Plaintiffs

---

(5) The extent to which that design or formulation is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

Ohio Rev. Code Ann. § 2307.75(B).

[19]The benefits associated with the design of a product are determined by considering factors including, but not limited to, the following:

(1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;

(2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;

(3) The nature and magnitude of any foreseeable risks associated with an alternative design or formulation.

Ohio Rev. Code Ann. § 2307.75(C).

25

have not set forth sufficient evidence to establish a genuine issue of material fact that the use of a door with unknown characteristics was a proximate cause of Mrs. Hufford's injury.

As stated in Ohio Revised Code § 2307.73, a manufacturer is only liable for a defective aspect of a product if the preponderance of the evidence indicates that the defect was a proximate cause of the harm for which the plaintiff seeks to recover. Ohio Rev. Code Ann. § 2307.73(A)(2). The evidence set forth by a plaintiff, on this point, may take one of two forms. In some cases, the evidence will directly link the alleged product defect to the injury. Fogle v. Cessna Aircraft Co., 1992 Ohio App. LEXIS 158, *11 (Ohio 10th App. Dist. Jan. 16, 1992). "Alternatively, where there are several possible explanations, evidence tending to eliminate the other possibilities necessarily acts as proof of the remaining possibility." Id. (citing Westinghouse Electric Corp. v. Dolly Madison Corp., 42 Ohio St. 2d 122, 127, 326 N.E.2d 651 (1975); Gedra v. Dallmer, 153 Ohio St. 258, syl. ¶ 2, 91 N.E.2d 256 (1950)).

The Plaintiffs here have set forth no evidence that directly links the characteristics of Mrs. Hufford's door, door frame, door jamb or door hardware to the injury that she sustained, nor have they set forth any evidence tending to eliminate other possibilities that may have caused the injury, such that the only possibility remaining is that some aspect of the Huffords' door played a role in the mishap. On the contrary, their own expert testified that when he affixed the product to the door in the same manner as Mrs. Hufford allegedly did, he could not

26

pull the anchor device free from the door.

The Plaintiffs have not set forth sufficient evidence to establish a genuine issue of material fact as to whether the alleged design defect was a proximate cause of Mrs. Hufford's injuries. Thus, the Plaintiffs' Motion for Partial Summary Judgment (Doc. #40), on their claim for defective design (Count I), is OVERRULED, while the Defendants' Motion for Partial Summary Judgment (Doc. #48), as to this claim, is SUSTAINED.

IV.    IDENTITY OF PROPER DEFENDANTS

The Defendants have also moved for summary judgment as to all claims against Lenco and SWBM, claiming that neither is responsible for the design, manufacture or sale of the product in question. Doc. #41 at 13-15. The Court will address the status of each Defendant, in turn, after it provides a brief overview of Ohio law, on this point.

In accordance with the Ohio Products Liability Act, the only "person" who may be held liable under § 2307.75 (defective design) and § 2307.76 (defect due to inadequate warning) is a "manufacturer."[20] Ohio Rev. Code Ann. § 2307.73(A)(1). The Act defines a "manufacturer" to mean "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product." Ohio Rev. Code Ann.

---

[20]A "supplier" may also be held liable, under § 2307.78 of Ohio's Products Liability Act, but the Plaintiffs in this case have not alleged such a claim.

27

§ 2307.71(A)(9).

### A.     Lenco

The Defendants argue that Lenco originally entered into a licensing
agreement with SWBM. Doc. #38 (Sands Dep.) at 67-68. However, when Provida
was established, Lenco assigned to Provida all of its rights, in October, 2000, well
before Mrs. Hufford's purchase of the exercise system, in 2005. Id.; Doc. #41, Ex.
A (Sands Aff.) ¶¶ 1, 11. The Defendants conclude that, because Lenco was not
engaged in a business to design, formulate, produce, create, make, construct,
assemble, or rebuild the product or a component of the product in question,
summary judgment in favor of Lenco is appropriate. The Plaintiffs provide no
evidence or argument to the contrary.

Because the Plaintiffs have presented nothing to indicate that there is a
genuine issue of material fact as to whether Lenco was a "manufacturer" of the
product in question, the Defendants' Motion for Partial Summary Judgment (Doc.
#41), as to Lenco's involvement, is SUSTAINED.

### B.     SWBM

According to the Defendants, SWBM merely licenses to Provida the right to
use the name, likeness and endorsement of Michael Thurmond, in the sale of the
exercise system in question. Doc. #41, Ex. A (Sands Aff.) ¶ 13. The Defendants
further argue that a trademark licensor, who does nothing more than permit the use

28

of its trademark, is not liable for potential defects in the final product. Doc. #41 at

15 (citing Patterson v. Central Mills, Inc., 112 F. Supp. 2d 681 (N.D. Ohio 2000);

Kealoha v. E.I. Du Pont De Nemours & Co., 844 F. Supp. 590 (D. Haw. 1994)).

In response, the Plaintiffs argue that the facts present quite a different

picture, as to the level of SWBM's involvement in the creation and development of

the exercise system. As background, they point out that SWBM is a limited

liability corporation set up and owned by Michael Thurmond. Doc. #39 (Thurmond

Dep.) at 23-24. The Plaintiffs then point to the fact that the licensing agreement

between SWBM and Provida (previously between SWBM and Lenco) states that

SWBM is the "developer and owner" of the product. Doc. #39, Attach. #3,

Recitals, ¶1.[21] Also, the agreement provides that Michael Thurmond "will appear

in any . . . [i]nfomercial and/or [a]ppearance as the creator of the product." Id.

§ 4.4 (emphasis added). The Plaintiffs also contend that the exercise system was

collaboratively developed by Thurmond and Provida. Doc. #39 (Thurmond Dep.) at

35 (indicating that Thurmond worked with two Provida employees to develop the

exercises for the exercise program). The testimony of one of Provida's owners

(who is partially responsible for the day-to-day operations of the company), Jeffrey

---

[21]The Court also notes that the licensing agreement's recitals indicate not
only that SWBM (as the "licensor") is the "developer and owner" of the personal
fitness and exercise product, but that the "licensee" (previously Lenco, currently
Provida) is "engaged in the business of marketing and distributing personal fitness
and exercise products via direct response television, the Internet and by other
means" and that the licensee desires to "obtain license rights to market and
distribute the [p]roduct." Doc. #39, Attach. #3, Recitals, ¶¶ 1-3.

Clifford, also indicates that Provida simply adopted the external anchor system (using the door as an anchor, along with an anchoring device, which was subsequently modified somewhat) that Mr. Thurmond used in his original program.[22] Id. at 15, 26-28, 34-40.

Returning to the Defendants' assertions pertaining to the law on point, the Court recognizes that they are correct in stating that "a trademark licensor -- who does nothing more than permit the use its trademark -- is not liable in tort for potential defects in the final product." Patterson v. Central Mills, Inc., 112 F. Supp. 2d 681, 692 (N.D. Ohio 2000). However, the Plaintiffs, in this case, have pointed to sufficient evidence to indicate that SWBM is considerably more than a licensor who does nothing more than permit the use of its trademark. Rather, the evidence tends to indicate that SWBM was engaged in the business of designing, formulating and/or creating the product in question.

Because there is a genuine issue of material fact as to whether SWBM is a "manufacturer" of the exercise system at issue, the Defendants' Motion for Partial Summary Judgment (Doc. #41), as to SWBM's involvement, is OVERRULED.

---

[22]Mr. Clifford also testifies that Provida was formed specifically for the purpose of producing Michael Thurmond's Six-Week Body Makeover product. Doc. #36 (Clifford Dep.) at 14.

30

V.    CONCLUSION

The Plaintiffs' Motion for Partial Summary Judgment (Doc. #40) is

SUSTAINED, in part, as to the following:

- With regard to the Plaintiffs' claim that the product was defective due to inadequate warning or instruction (Count III), as to the question of the inadequacy of the warning and proximate cause.

The Plaintiffs' Motion for Partial Summary Judgment (Doc. #40) is

OVERRULED, in part, as to the following:

- With regard to the Plaintiffs' claim that the product was defective due to inadequate warning or instruction (Count III), as to the question of whether the hazards associated with the product were open and obvious.

- With regard to all aspects of the Plaintiffs' claim for defective design (Count I).

The Defendants' Motion for Partial Summary Judgment (Doc. #41) is

SUSTAINED, in part, as to the following:

- With regard to whether Lenco is a "manufacturer" of the product in question.

The Defendants' Motion for Partial Summary Judgment (Doc. #41) is

OVERRULED, in part, as to the following:

- With regard to whether SWBM is a "manufacturer" of the product in question.

The Defendants' Supplemental Motion for Partial Summary Judgment (Doc.

#48) is SUSTAINED, in part, as to the following:

- With regard to all aspects of the Plaintiffs' claim for defective design (Count I).

31

The Defendants' Supplemental Motion for Partial Summary Judgment (Doc. #48) is OVERRULED, in part, as to the following:

- With regard to all aspects of the Plaintiffs' claim that the product was defective due to inadequate warning or instruction (Count III).

In sum, Count I is no longer a viable claim. However, the Plaintiffs retain viable claims for Counts II, IV and V, which were not subjects of the present Motions for Partial Summary Judgement. Further, Plaintiffs retain a viable claim for Count III, with the only issue to be submitted to the jury that of whether the hazards associated with the product were open and obvious. Furthermore, all remaining claims against Defendant SWBM (and Provida) may proceed, while those against Defendant Lenco may not.

All rulings hereunder are made on the condition that the Defendants provide proper Rule 56 evidence of the document attached to Document #41, as Exhibit C (warning insert), to the Court within three (3) days of the date of this Order. Failing this, all rulings hereunder, in favor of the Defendants, will be vacated.

July 7, 2008

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Counsel of record